IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TALIA TIRAM, et al.,<br>Plaintiffs,<br>v.<br>ESTYLE CORP. LLC, et al.,<br>Defendants. | CIVIL ACTION<br>NO. 24-240 |

**OPINION**

**Slomsky, J.** **November 6, 2026**

**TABLE OF CONTENTS**

**I. INTRODUCTION** ........ 3

**II. BACKGROUND** ........ 4

A. Parties ........ 4

B. Acquisition of Ecoco ........ 5

C. Asset Purchase Agreement (“APA”) & Employment Agreements ........ 6

D. Stockholders Agreement (“SA”) ........ 8

E. Mismanagement & Termination of Jonathan and Talia Tiram ........ 8

F. Related Litigation in Estyle Corp., No. 23-1393 ........ 9

G. Procedural History ........ 10

**III. STANDARD OF REVIEW** ........ 10

A. Rule 12(b)(6) Standard ........ 10

B. Rule 23.1 Standard ........ 12

**IV. ANALYSIS** ........ 13

A. Count I (Waste and Corporate Mismanagement) & Count II (Dilution of Minority Shares) ..... 14

1. Demand Letter ..... 14

2. Wrongful Refusal ..... 17

B. Count III (Fraudulent Inducement) ..... 19

1. Forward-Looking Puffery Statements ..... 20

2. Statements Regarding Jonathan and Talia Tiram ..... 21

C. Count IV (Breach of Implied Covenant of Good Faith and Fair Dealing) ..... 25

D. Count V (Breach of Contract) ..... 27

**V. CONCLUSION** ..... 28

## I. INTRODUCTION

This case arises from Estyle's[1] acquisition of Ecoco, a family-run hairstyle and beauty product business. (Doc. No. 27 ¶¶ 1–2.) Defendant Clarion Capital Partners, LLC ("Clarion") created Estyle to purchase Ecoco from its then-owner, Plaintiff Aaron Tiram. (Id. ¶ 2.) Plaintiffs Talia and Jonathan Tiram worked in executive roles at Ecoco before it merged into Estyle. (Id. ¶¶ 35–36.) After the acquisition, Talia and Jonathan Tiram received stock in Estyle in trusts for their benefit. (Id. ¶¶ 16–17.)

In the Amended Complaint, Plaintiffs bring direct and derivative claims[2] alleging that Defendants made false statements to induce Aaron Tiram to sell his business and subsequently mismanaged Estyle. (See id. ¶¶ 1–13.) Plaintiffs Talia and Jonathan Tiram bring derivative claims for corporate waste and mismanagement (Count I) and dilution of minority stockholders' rights (Count II). (See Doc. No. 27.) Plaintiff Aaron Tiram brings direct claims for fraudulent inducement (Count III), breach of the implied covenant of good faith and fair dealing (Count IV),

---

[1] The Complaint names ten (10) Defendants, including corporate entities and individuals. (Doc. No. 27.) Plaintiffs name four corporate entities as Defendants: (1) Estyle Holdings, Inc.; (2) Estyle Corp., LLC; (3) Ecostyle Holdings, LLC; and (4) Clarion Capital Partners, LLC ("Clarion"). (Id.) Clarion created Estyle Corp., LLC for the purpose of holding Ecoco. (Id. ¶ 58.) Clarion created Estyle Holdings, Inc. to hold title to Estyle Corp. LLC. (Id.) Clarion created Ecostyle Holdings, LLC to hold Clarion's stock in Estyle Holdings, Inc. (Id.) For clarity, the three Estyle entities are collectively referred to as "Estyle" in this Opinion.

Plaintiffs also name as Defendants six (6) members of Estyle's Board of Directors: (1) Eric Kogan; (2) Edward Martin; (3) Ariana Klener; (4) Jonathan Flicker; (5) Emmet A. Dennis, Jr.; and (6) Julie Marchant-Houle. (Id.)

[2] Plaintiffs bring both derivative and direct claims against Defendants. (See Doc. No. 27.) A derivative claim "enables a stockholder to bring suit on behalf of the corporation for harm done to the corporation." Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1036 (Del. 2004). Because the derivative claim is brought on the corporation's behalf, any recovery goes to the corporation instead of the shareholders. Id. By contrast, a direct claim alleges injury to shareholders' legal interests, with recovery going directly to the shareholders. Id.

and breach of contract (Count V). (See id.) Defendants have filed a Motion to Dismiss all claims alleged in the Amended Complaint. (Doc. Nos. 32, 33.)

For the following reasons, the Motion to Dismiss (Doc. Nos. 32, 33) will be granted on Counts I, II, III, and IV. The Motion will be granted in part and denied in part on Count V.

## II. BACKGROUND

### A. Parties

Plaintiff Aaron Tiram was the founder, President, and Chief Executive Officer ("CEO") of Ecoco[3] before the acquisition. (Doc. No. 27 ¶¶ 31, 34.) Aaron Tiram's children, Plaintiffs Talia and Jonathan Tiram, also worked for Ecoco. (Id. ¶¶ 35–36.) Plaintiff Talia Tiram was Ecoco's Director of Operations. (Id. ¶ 35.) Plaintiff Jonathan Tiram was Ecoco's Vice President of Sales and Marketing. (Id. ¶ 36.) After Estyle's acquisition of Ecoco, Plaintiffs Talia and Jonathan Tiram became indirect stockholders in Estyle pursuant to a Stockholders Agreement ("SA"), discussed infra. (Id. ¶¶ 16–17.)

Defendant Clarion Capital Partners, LLC ("Clarion") is a New York-based private equity firm. (Id. ¶¶ 2, 4.) Clarion created Defendants Estyle Corp., LLC, Estyle Holdings, Inc., and Ecostyle Holdings, LLC (collectively, "Estyle") to effectuate the purchase of Ecoco. (Id. ¶ 2.) Defendant Jonathan Flicker ("Flicker") is a Clarion representative who became Estyle's CEO and a member of Estyle's Board of Directors after the acquisition. (Id. ¶¶ 25, 106, 159.) Defendant Edward Martin ("Martin") was a managing director at Clarion who became a member of Estyle's Board of Directors. (Id. ¶¶ 23, 98.) Defendant Eric Kogan ("Kogan") is a Partner at Clarion who became a member of Estyle's Board of Directors. (Id. ¶¶ 22, 102.) Defendant Ariana Klener is a

---

[3] Ecoco was comprised of numerous corporate entities, including Ecoco, Inc.; Tayloni LLC; T.T. Beauty LLC d/b/a Master Well Comb; and Ecoco JAX LLC. (Doc. No. 34 Ex. A.) Estyle purchased all of these entities in the acquisition. (Id.)

Vice President at Clarion who became a member of Estyle's Board of Directors. (Id. ¶¶ 24, 105.) Defendants Emmet A. Dennis, Jr. and Julie Marhcant-Houle are members of Estyle's Board of Directors. (Id. ¶¶ 26–27.)

**B. Acquisition of Ecoco**

Before 2020, Aaron Tiram owned and managed Ecoco, a business that provided haircare and beauty supplies. (Id. ¶ 31.) The business was family-run, with Aaron Tiram's children, Jonathan and Talia Tiram, in executive roles. (Id. ¶¶ 35–36.) While Ecoco was commercially successful, the Tiram family wanted to expand the business and sought additional guidance to do so. (Id. ¶¶ 44, 57.) Around 2018, the Tiram family met Flicker, who stated he represented private equity firm Clarion, and "that Clarion was interested in obtaining the Ecoco business and continuing [its] growth and expansion." (Id. ¶ 45.)

Aaron Tiram had reservations about selling his family-run business to a private equity firm. (Id. ¶ 46.) He wanted himself and his children to stay involved in Ecoco's management. (See id. ¶ 48.) But more importantly, Aaron Tiram feared Clarion would apply to Ecoco the "model for which private equity investment firms like Clarion are infamous." (Id. ¶ 4.) That is, Aaron Tiram feared Clarion would "strip[] [Ecoco] of its assets, . . . terminat[e] loyal employees. . . , and otherwise effectively dismantle[e] the business in order to maximize . . . profits." (Id.)

Aaron Tiram repeatedly communicated his apprehensions to Flicker, Martin, and Kogan. (Id. ¶¶ 49, 51.) In response, Flicker, Martin, and Kogan reassured Aaron Tiram that "[Clarion] would continue to engage Aaron Tiram as a consultant . . . and that it would keep his children in their management roles." (Id. ¶¶ 50, 68, 123.) Flicker, Martin, and Kogan also said "[Clarion] would not compromise the operations of the business after a sale, and that [it] . . . was interested in Ecoco because of its historical success . . . and investment potential." (Id. ¶¶ 51, 63, 73–75.) For example, on February 22, 2021, Flicker sent Jonathan Tiram an electronic message informing

him that Estyle "intend[ed] to sell millions" of products and would "launch . . . seventeen new product[s]" that year. (Id. ¶ 75.)

Based on these assurances, Aaron Tiram agreed to sell Ecoco to Clarion. (Id. ¶ 72.) In September 2020, the parties executed an Asset Purchase Agreement ("APA") to effectuate Estyle's $143 million acquisition of Ecoco. (Id. ¶ 80.) Accompanying the APA were Employment Agreements for Jonathan and Talia Tiram and a Stockholders Agreement ("SA"). (Id. ¶¶ 89, 111.) These agreements are discussed in turn.[4]

### C. Asset Purchase Agreement ("APA") & Employment Agreements

The primary document governing the acquisition is the September 4, 2020 Asset Purchase Agreement ("APA"), as amended by the parties on March 16, 2021. (Id. ¶ 80.) What follows is a brief description of the relevant APA terms.

First, the APA allowed Estyle to seek indemnification against Aaron Tiram if he breached his APA Representations and Warranties.[5] (Doc. No. 34 Ex. A § 6.3.) At the time of the acquisition, $3.72 million of the sum Estyle paid Aaron Tiram was placed in escrow. (Doc. No. 27 ¶ 81.) Under the indemnification provision, if Aaron Tiram breached his Representations and Warranties, Estyle must first seek recovery from the $3.72 million in escrow and then seek recovery from an

---

[4] The APA, SA, and Employment Agreements are attached to Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 34). In ruling on a motion to dismiss, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Because the Complaint repeatedly references and quotes the APA, SA, and Employment Agreements, the Court may consider these documents in ruling on the Motion to Dismiss.

[5] The APA delineates the obligations of the parties using the terms "Buyer" and "Sellers." (Doc. No. 34 Ex. A at 8.) "Buyer" refers to Estyle Corp., LLC. (Id.) "Sellers" refers to Ecoco, Inc., Talyoni LLC, T.T. Beauty LLC d/b/a Master Well Comb Company, Ecoco Jax LLC, and Aaron Tiram. (Id.) For purposes of clarity, "Estyle" refers to the "Buyer" under the APA, and "Aaron Tiram" refers to the "Sellers" under the APA.

insurance policy. (Id. ¶ 86.) Furthermore, the APA required "the parties to cooperate in good faith to resolve any disputed claim for indemnification." (Doc. No. 34 Ex. A § 6.6(a).) If Estyle and Aaron Tiram were to dispute whether the funds in escrow are subject to indemnification, the escrow agent was to retain the disputed funds. (Doc. No. 27 ¶ 81.) If no dispute occurred, twelve months and five days after the closing, the parties were to direct the escrow agent to remit the funds to Aaron Tiram. (Id.)

Second, the APA contains an integration clause, which states the APA "contain[s] the entire agreement and understanding of the Parties" and supersedes "all prior agreements and understandings, whether written or oral." (Doc. No. 34 Ex. A § 9.6.) The APA also contains a "Non-Reliance of [Estyle] provision, which states "in entering into [the APA], [Estyle] has relied solely upon [its own] investigation, review, and analysis and not on any factual representations or opinions [of] [Ecoco]." (Id. § 7.9.) The APA does not contain a similar "Non-Reliance" provision for Aaron Tiram. (See id.)

Third, the APA contained certain provisions on the retention of employees. A provision titled "Employment" states "[n]othing in this Agreement shall obligate [Estyle] to continue the employment of any employee or to offer on the same terms or conditions or with the same benefits offered by [Ecoco]." (Id. § 7.12.)

The APA also incorporates by reference the Employment Agreements of Jonathan and Talia Tiram. (Id. § 3.2(a)(ix).) On September 4, 2020, the parties executed two Employment Agreements governing Jonathan and Talia Tiram's future employment at Estyle. (Doc. No. 34 Ex. E.) These agreements provided that "[Estyle] may immediately terminate [Jonathan or Talia Tiram's] employment without Cause." (Id. § 4(d).)

While negotiating the APA and Employment Agreements, Aaron Tiram repeatedly asked

Defendants Flicker, Kogan, Martin, and Klener about the without-cause termination provisions in the Employment Agreements. (Doc. No. 27 ¶¶ 123, 226.) Defendants Flicker, Kogan, Martin, and Klener responded that "the 'termination without cause' provision in their employment contracts was a mere formality, required in all employment contracts, but that the provision would never be invoked." (Id. ¶¶ 3, 123, 226.) Defendants Flicker and Martin also represented to Aaron Tiram that his children would remain with Estyle for at least five years post-acquisition. (Id. ¶ 123.)

**D. Stockholders Agreement ("SA")**

On September 9, 2020, the parties executed a Stockholders Agreement ("SA"). (Doc. No. 34 Ex. F.) As consideration for the sale of Ecoco, Aaron Tiram received stock in Estyle. (Doc. No. 27 ¶ 89.) The SA required Aaron Tiram to transfer the stocks he received to trusts created for the benefit of Jonathan and Talia Tiram. (Id. ¶ 91.) Under the SA's terms, after receiving the stocks, Jonathan and Talia Tiram would then execute separate Restrictive Covenant Agreements preventing them from working for other companies in the hair and beauty industry. (Id.) On November 11, 2020, Aaron Tiram transferred the stocks to the trusts, and Jonathan and Talia Tiram executed the Restrictive Covenants the SA required. (Id. ¶ 95.)

**E. Mismanagement & Termination of Jonathan and Talia Tiram**

After the acquisition, Plaintiffs allege Defendants engaged in mismanagement and self-dealing. For example, the Verified Complaint states Defendants "damaged customer and supplier relationships," wasted company resources on inadequate equipment, and paid "wasteful salaries" to incompetent newly-hired employees. (Id. at 26–29.) Defendants also "sabotaged Estyle's efforts to expand its consumer brands," discontinued profitable products, and took actions that "were neither appropriate nor needed for a company that purported to be dedicated to continuing its development and growth." (Id. at 30–32, 37–38.) Talia and Jonathan Tiram repeatedly raised concerns to Defendants, but these concerns remained unaddressed. (Id. ¶¶ 165–67.)

Defendants also did not follow through on their promise to keep the Tirams involved in Estyle. Defendants "never sought [Aaron Tiram's] advice about any issue or otherwise made use of his expertise" and "told [Aaron Tiram] to stay away from the Estyle offices." (Id. ¶¶ 162–63.) And on May 26, 2021, Defendants terminated Talia and Jonathan Tiram without notice or cause. (Id. ¶ 168.) Plaintiffs allege the termination of Talia and Jonathan Tiram was deliberate because of the Restrictive Covenants they signed under the SA. (Id. ¶¶ 218–19.) They claim Defendants knew Talia and Jonathan Tiram "would be forced to remain unemployed for the foreseeable future as a result of the restrictive covenants." (Id.)

**F. Related Litigation in Estyle Corp., No. 23-1393**

In December 2023, Estyle initiated a related case in this Court, Estyle Corp., LLC v. Marit, LLC et al., No 23-1393 (D. Del. 2023), against the Tirams and corporate entities owed by the Tirams. In Estyle Corp., No. 23-1393, Estyle alleges the Tirams breached the Representations and Warranties in the APA. (Id. ¶ 179.) The filing of this lawsuit triggered the APA's indemnification provision. (See id. ¶ 247.) As such, under the APA, the escrow agent was required retain the $3.72 million in escrow instead of sending it to Aaron Tiram. (Id.)

In the Amended Complaint in the present case, Plaintiffs claim Defendants commenced the related litigation, Estyle Corp., No. 23-1393, to prevent Aaron Tiram from receiving the funds held in escrow. (Id. ¶ 179.) Plaintiffs also assert Defendants "are wasting Estyle's resources by engaging in bad-faith and meritless litigation against Aaron Tiram and Ecoco." (Id.) Plaintiffs state that Defendants "have falsely alleged . . . that Aaron Tiram breached the Sellers Representations and Warranties set forth in . . . the APA." (Id. ¶¶ 179, 247.) Plaintiffs claim Defendants did this "in bad faith" in order to "cause" the escrow agent to retain the funds in escrow instead of remitting the money to Aaron Tiram. (Id. ¶ 247.)

### G. Procedural History

On February 7, 2024, Jonathan and Talia Tiram sent Defendants a letter expressing "concerns about the conduct of [Estyle], including the waste and mismanagement of [Estyle]." (Id. ¶ 193.) Before the Board responded to the letter, Plaintiffs commenced this litigation on February 22, 2024 by filing a Complaint (Doc. No. 1).

On June 24, 2024, Plaintiffs filed the Amended Complaint (Doc. No. 27), which is the operative Complaint here. On August 21, 2024, Defendants filed the Motion to Dismiss (Doc. Nos. 32, 33). On October 7, 2024, Plaintiffs filed a Response (Doc. No. 37). On November 4, 2024, Defendants filed a Reply (Doc. No. 38). A hearing on the Motion occurred on April 24, 2025. In May 2025, the parties informed the Court they were attempting to reach a resolution of this case and the related case, Estyle Corp., No. 23-1393. (Doc. No. 55.) Over one year later, on October 19, 2026, Defendants asked the Court to rule on the Motion to Dismiss in this case because settlement negotiations were unsuccessful. (Doc. No. 61.)

The Motion to Dismiss (Doc. Nos. 32, 33) is now ripe for disposition.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(6) Standard

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id.

(quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

629 F.3d 121, 130 (3d Cir. 2010) (alteration in original) (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

**B. Rule 23.1 Standard**

To maintain a derivative action, a Complaint must comply with Federal Rule of Civil Procedure 23.1. This Rule "applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce." Fed. R. Civ. P. 23.1(a). Rule 23.1(b) states, in relevant part, that a derivative claim in a Complaint must:

(3) state with particularity:

> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>
> (B) The reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b). Thus, Rule 23.1(b)(3)(B) requires a plaintiff to plead with particularity the demands made, or the reasons for not making such "effort[s] . . . to obtain the desired action from the directors." Id.

This demand requirement "allows the corporate machinery to self-correct problems and to safeguard against frivolous lawsuits." Raul v. Rynd, 929 F. Supp. 2d 333, 340 (D. Del. 2013). Rule 23.1 "does not create a demand requirement of any particular dimension. On its face, Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings." Blasband v. Rales, 971 F.2d 1034, 1047 (3d Cir. 1992) (emphasis in original) (quoting Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 96 (1991)). "Although Rule 23.1 provides the pleading standard for derivative actions in federal court, the substantive rules for determining whether a plaintiff has satisfied that standard 'are a matter of state law.'" King v. Baldino, 409 Fed. App'x. 535, 537 (3d Cir. 2010); see also Rales, 971 F.2d at 1047. In Kamen, the United States Supreme Court stated:

> The presumption that state law should be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards . . . . Corporation law is one such area.

500 U.S. at 98. Therefore, "[a] federal court must apply a state's demand-futility exception under Rule 23.1." Fagin v. Gilmartin, 432 F.3d 276, 285 n.2 (3d Cir. 2005) (citing Kamen, 500 U.S. at 108–09).[6]

In corporate governance, "[the board of] directors, rather than shareholders, manage the business and affairs of the corporation." Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000). "This includes the decision to commence litigation or, alternatively, to abstain from filing suit." Zomolosky v. Kullman, 640 Fed. App'x. 212, 216 (3d Cir. 2016). Additionally, "[i]t is clear that the demand requirement is not a mere formality, but rather is an important aspect of Delaware's substantive law." Rales, 971 F.2d at 1048.

## IV. ANALYSIS

In the Amended Complaint, Plaintiffs Jonathan and Talia Tiram bring derivative claims for corporate waste and mismanagement (Count I) and dilution of minority stockholders' rights (Count II). (See Doc. No. 27.) Plaintiff Aaron Tiram brings direct claims for fraudulent inducement (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), and breach of contract (Count V). (See id.) Each of these claims is discussed in turn.

[6] Here, the relevant Defendants, Clarion, Ecostyle Holdings, LLC, Estyle Corp., LLC, and Estyle Holdings, Inc., are incorporated in Delaware. In addition, the APA and SA provide that Delaware law applies to disputes related to or arising from the Agreements. (Doc. No. 34 Ex. A § 9.8; Ex. F §§ 6.10, 6.11.) Accordingly, Delaware law will be used in this case. (See Doc. No. 27 ¶ 246).

### A. Count I (Waste and Corporate Mismanagement) & Count II (Dilution of Minority Shares)

Counts I and II of the Amended Complaint are derivative claims brought by Plaintiffs Jonathan and Talia Tiram. (See id.) Jonathan and Talia Tiram lack standing to bring these claims under Federal Rule of Civil Procedure 23.1 because they have made a demand on the Board and have failed to plead wrongful refusal. Therefore, Counts I and II will be dismissed.

#### 1. Demand Letter

First, it is necessary to determine if demand was made on Estyle's Board of Directors. A shareholder has standing to bring a derivative claim under Delaware law if "(1) the corporation's directors wrongfully refuse a demand to authorize the corporation to bring suit; or (2) demand would have been futile because the directors were incapable of impartially considering the demand." In re BCG Partners, Inc. v. Derivative Litig., No. 2018-0722, 2021 WL 4271788, at *5 (Del. Ch. Sept. 20, 2021) (emphasis added). "By making a demand, a stockholder tacitly acknowledges the absence of facts to support a finding of futility." Spiegel v. Buntrock, 571 A.2d 767, 775 (Del. 1990). Accordingly, "[a] shareholder who makes a demand can no longer argue that demand is excused." Id. In other words, under Delaware law, a shareholder must choose to either (1) make a demand on the board, or (2) plead demand futility; they cannot do both. See id. at 775–76; Boeing Co. v. Schrontz, No. 11273, 1992 WL 81228, at *5 (Del. Ch. Apr. 20, 1992) ("The Spiegel court held that stockholders must make a choice either to make demand or attempt to establish demand futility.").

Here, in the Amended Complaint, Plaintiffs argue a demand would be futile, which ordinarily would signify that a demand was never made. (See Doc. No. 27 ¶¶ 202–03, 208–09.) However, in a letter dated February 7, 2024, Jonathan and Talia Tiram demanded Defendants to rectify the waste and mismanagement occurring at Estyle. (Id. ¶ 194.) The letter's subject is

"Demand for Corrective Action." (Doc. No. 34 Ex. B.)[7] It reads, in relevant part:

> . . . The need for corrective action is a result of Estyle's current management's: deliberate actions to reduce the productivity of the business in an apparent effort to retrench the business for the sole benefit of [Clarion] and its pronounced intention to resell the business within a five to seven year window; reduction of the Company product lines and product placement without a good faith business purpose; payment of duplicative and inflated salaries to affiliates and associates of Estyle and Clarion, including but not limited to executives and outside consultants, who replaced more qualified and experienced representatives of the prior business entity; malfeasance and destructive dealings with Estyle vendors, suppliers and customers, including but not limited to making late payments to third-parties, thereby compromising Estyle's productivity; failure to make promised dividends to stockholders; and, purposeful dilution of the value of Company stock for the ultimate benefit of Clarion. Further, to the detriment of the Company, Estyle . . . commenced wasteful and misdirected litigation at great expense to the Company notwithstanding the speciousness of its contention that it overpaid for the business and was otherwise mislead prior to execution of the APA. Further risking exposure to the Company, Estyle has failed to release from escrow established in the APA approximately $3.72m plus interest (the "Escrowed Funds") that is due and owing to the Sellers of the business.
>
> Such actions constitute corporate waste, mismanagement, violations of Estyle's fiduciary duty and have harmed the Corporation by reducing the profitability and value of the Company and otherwise wasting corporate assets.
>
> Consequently, Talia Tiram and Jonathan Tiram demand the Board redress the wrongful conduct and the harm to the Corporation by taking immediate action to remedy the above identified issues, including, but not limited to, replacing the current Board and executives operating the Company with experienced people who have the Company's success, and not Clarion's return on its investment, as its primary and exclusive goal; retaining experienced employees who have the ability and incentive to create and remedy relations with third party vendors, suppliers and customers; reviewing the executives and other staffing of the Company in order to rid it of hires who obtained or hold their position as a result of connections to, inter alia, Clarion, and not as a result of their experience and ability; ridding the company of duplicative and redundant positions; restoring the Company product offerings and placement; dismissing with prejudice the litigation

---

[7] The February 7, 2024 letter is an attachment to Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 34). Because the claims in Plaintiffs' Complaint are partially "based on" this letter, this attachment may be considered in ruling on the Motion to Dismiss. Pension Benefit Guar. Corp., 998 F.2d at 1196.

> pending in the United States District Court for the District of Delaware; immediately releasing from escrow to the Sellers the Escrowed Funds in order to avoid wasteful litigation expense and resources.
>
> Talia Tiram and Jonathan Tiram demand the Board take the demanded action no later than February 12, 2024.

(Id.) In the Amended Complaint, Plaintiffs do not refer to the letter as a demand letter, but instead characterize the letter "[a]s further evidence of the futility of making a demand." (Doc. No. 27 ¶ 195.) This characterization of the letter is unpersuasive.

In Yaw v. Talley, the Delaware Court of Chancery provided a three-part test to determine if a communication is a demand letter. No. 12882, 1994 WL 89019, at *7 (Del. Ch. Mar. 2, 1994). To be a demand letter, "a communication must specifically state: (i) the identity of the alleged wrongdoers, (ii) the wrongdoing they allegedly perpetrated and the resultant injury to the corporation, and (iii) the legal action the shareholder wants the board to take on the corporation's behalf." Id. Courts inquiring whether a communication constitutes a demand "cannot look to the subjective intent of the speaker," but instead "must evaluate the substance of the communication objectively to determine whether it would place a recipient 'on notice of possible wrongdoing.'" Solak v. Welch, No. 2018-0810, 2019 WL 5588877, at *5 (Del. Ch. Oct. 30, 2019) (quoting Yaw, 1994 WL 89019, at *7).

Here, the February 7, 2024 communication constitutes a demand letter. First, it sets out the identities of the potential wrongdoers: Estyle's Board of Directors. (Doc. No. 34 Ex. B.) Second, it alleges the wrongdoing these Directors are alleged to have committed, including specific examples of "corporate waste, mismanagement, [and] violations of . . . fiduciary dut[ies]." (Id.) Third, the letter describes a series of actions it wants the Board of Directors to take. It asks for a replacement of "current Board and executives operating the Company with experienced people

who have the Company's success, and not Clarion's return on its investment," restoration of "product offerings and placement," and "dismiss[al] with prejudice [of] the litigation pending in the United States District Court for the District of Delaware." (Id.) It asks the Board to remit the funds held in escrow to Aaron Tiram. (Id.) On balance, this letter would put Estyle "on notice of possible wrongdoing," as it sets out substantially the same claims as the Amended Complaint. Solak, 2019 WL 5588877, at *5.

While Plaintiffs assert the letter was not intended to be a demand letter, the relevant test "cannot look to the subjective intent of the speaker." Id. Because the February 7, 2024 letter meets all three factors, it qualifies as a demand letter. And "[b]y making a demand, a shareholder thereby makes his . . . contention, that demand was excused, moot." Spiegel, 571 A.2d at 775. Therefore, the arguments in the Amended Complaint that demand is futile need not be considered.

**2. Wrongful Refusal**

Our inquiry does not end here, however. "[O]nce a demand has been made, absent a wrongful refusal, the stockholder's ability to initiate a derivative suit is terminated." Id. Therefore, a shareholder who has made a demand must allege that the demand was wrongfully refused to move forward with a lawsuit. Id. Because Plaintiffs' February 7, 2024 letter was a demand letter, Jonathan and Talia Tiram must plead wrongful refusal to comply with Rule 23.1.

"After a shareholder makes demand on the board, the shareholder must allow the board a reasonable time to investigate and respond to the claim before filing suit or the court will consider that suit premature." Charval Inv. Co., Inc. v. Rockefeller, No. 14397, 1995 WL 684869, at *3 (Del. Ch. Nov. 7, 1995). While there is "no formula" to determine if a Board has responded within a reasonable time, "a court . . . must recognize that the 'amount of time needed for a response will vary in direct proportion to the complexity of the technological, quantitative, and legal issues raised by the demand.'" Id. (quoting Allison v. Gen. Motors Corp., 604 F. Supp. 1106, 1117–18

(D. Del. 1985)). When a stockholder fails to give the Board adequate time to respond to a demand letter, the complaint is ordinarily dismissed because the stockholder lacks standing under Rule 23.1. Id. at *4. See also Allison, 604 F. Supp. at 1118 ("Premature filing of suit after demand has been made in a demand-required case frustrates the policy of Rule 23.1.").

Here, the Amended Complaint does not mention wrongful refusal, as it focuses on demand futility. But even if Plaintiffs had pled wrongful refusal, the timing of the demand letter weighs against the Board's failure to respond being a wrongful act. Plaintiffs sent the letter to Defendants on February 7, 2024, and demanded action by February 12, 2024. (Doc. No. 34 Ex. B.) On February 12, 2024, Estyle's counsel confirmed receipt and stated the letter dated February 7, 2024 had been referred to the Board. (Doc. No. 33 at 11.) Ten days later, on February 22, 2024, Plaintiffs commenced this litigation by filing a Complaint. (Doc. No. 1.)

Plaintiffs' letter raised a variety of concerns with the running of the business, some of which were technical and concerned the hair and beauty industry. For example, Plaintiffs urged the Board of Directors to "restor[e] the Company product offerings and placement." Plaintiffs also called for "replac[ement of] the current Board and executives operating the Company with experienced people who have the Company's success," which could not have occurred within the ten days between the demand letter and filing of the Complaint. Given the volume of Plaintiffs' concerns and the short time frame between the demand letter and filing of the Complaint, Plaintiffs have not provided the Board an adequate opportunity to investigate and address the claims. Therefore, they cannot plead that refusal occurred, or that such refusal was wrongful.

Thus, Counts I and II, which allege derivative claims on behalf of the company, will be dismissed because Plaintiffs lack standing under Fed. R. Civ. P. 23.1 to bring the claims asserted in those Counts.

**B. Count III (Fraudulent Inducement)**

Count III of the Amended Complaint is a direct claim by Aaron Tiram against Defendants for fraudulent inducement. (Doc. No. 27.) Because the Amended Complaint fails to state a claim for fraudulent inducement, Count III will be dismissed.

To state a claim for fraudulent inducement under Delaware law, a plaintiff "must plead facts supporting an inference that: (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." Arby Partners, V., L.P. v. F&W Acquisition LLC, 891 A.2d 1032, 1050 (Del. Ch. 2006).

Fraudulent inducement claims must be pled with particularity to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Alpizar-Fallas v. Favero, 908 F.3d 910, 918–19 (3d Cir. 2008). Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet this standard, a complaint must provide "all of the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue." U.S. ex rel. Whatley v. Eastwick Coll., 657 Fed. App'x 89, 93 (3d Cir. 2016) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002)). It must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Institutional Invs. Grp. v. Avaya, Inc., 564 F.3d 242, 253 (3d Cir. 2009).

Aaron Tiram alleges Defendants fraudulently induced him into selling his business by making two categories of statements. First, Defendants told Aaron Tiram they would manage the

business with commercial success and profitability as a priority. (Doc. No. 27 at 45–46.) Second, Defendants assured Aaron Tiram his children would remain employed at Estyle after the acquisition. (Id.) Both categories of statements are addressed in turn.[8]

**1. Forward-Looking Puffery Statements**

The first category of statements Aaron Tiram contends fraudulently induced him into selling Ecoco concerned future revenues and management of the business. For example, the Amended Complaint claims Defendants Flicker, Martin, and Kogan "promised and represented both Clarion's commitment to the continuing development and growth of the business." (Id. ¶¶ 64, 225.) It also states Flicker informed Aaron Tiram "Clarion would be an ideal partner to help Ecoco to grow," and sent Jonathan Tiram an electronic message saying the company "intend[s] to sell millions." (Id. ¶¶ 45, 75.) Because these statements are not actionable as fraud, the fraudulent inducement claims based on them will be dismissed.

"Forward-looking statements of opinion are actionable as fraudulent only if they were known to be false when made or were made with a lack of good faith." Mooney v. E.I. du Pont de Nemours and Co., No. 17C-01-374, 2017 WL 5713308, at *6 (Del. Super. Ct. Nov. 28, 2017). As such, "statements of expectation or opinion about the future of [a] company and the hoped for results of business strategies . . . are generally not actionable under Delaware law." Trenwick Am. Litig. Tr. v. Ernst & Young, LLP, No. 1571-N, 2006 WL 4782378, at *31 (Del. Ch. Aug. 10, 2006).

Here, the statements regarding Estyle's profitability and growth are forward-looking statements of opinion. Aaron Tiram does not allege these statements were made in bad faith. Therefore, these "vague statement[s] of corporate optimism" cannot form the basis of a fraudulent

---

[8] Defendants also argue the fraudulent inducement claims must be dismissed because they are time-barred. (Doc. No. 33 at 26.) Because the fraudulent inducement claims fail to state a claim upon which relief could be granted, this argument need not be addressed.

inducement claim. Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC, No. 2023-0699, 2024 WL 2890980, at *9 (Del. Ch. June 10, 2024). Accordingly, the fraudulent inducement claims based on these statements will be dismissed.

**2. Statements Regarding Jonathan and Talia Tiram**

The second category of statements supporting Aaron Tiram's fraudulent inducement claim are Defendants' assurances that Jonathan and Talia Tiram would remain employed with Estyle after the acquisition. In particular, the Amended Complaint alleges Defendants Flicker, Kogan, Martin, and Klener "reassured Aaron Tiram that the Company would continue to employ Talia Tiram and Jonathan Tiram . . . and that the provision permitting no-cause termination was a company-wide formality that would never be invoked." (Doc. No. 27 ¶ 226.) In the Motion to Dismiss the Amended Complaint, Defendants argue this claim fails because (1) Aaron Tiram has failed to plead fraudulent inducement with the requisite particularity under Rule 9(b) and (2) Aaron Tiram cannot plead justifiable reliance. (Doc. No. 33 at 21–24.) The Court agrees.

**a. Rule 9(b) Particularity**

Defendants argue the fraudulent inducement claims should be dismissed because they are not pled with the requisite particularity under Federal Rule of Civil Procedure 9(b). (Id. at 23–24.) When a fraudulent inducement claim is based on promises of future performance, a plaintiff must "plead specific facts that lead to a reasonable inference that the promissor had no intention of performing at the time the promise was made." Winner Acceptance Corp. v. Return on Cap. Corp., No. 3088-VCP, 2008 WL 5352063, at *10 (Del. Ch. Dec. 23, 2008). "To defend against such assertions, a defendant logically must be apprised when the alleged statements were made in order to counter the assertion that it did not intend to keep its promise at that time." Fortis Advisors LLC v. Dialog Semiconductor PLC, No. 9522-CB, 2015 WL 401371, at *6 (Del. Ch. Oct. 27, 2015).

Here, the Amended Complaint falls short of meeting this standard. First, Aaron Tiram fails to allege when any of these statements occurred. While the Amended Complaint states Defendants "repeated[ly]" informed Aaron Tiram that Jonathan and Talia Tiram would remain employed, it does not state the date of these representations. (Doc. No. 27 ¶ 123.) True, it may be inferred from the Amended Complaint that these statements occurred sometime before the execution of the APA and Employment Agreements. However, "[t]his . . . is the functional equivalent to providing no time parameter at all because the misrepresentations logically could not have occurred during any other period of time." Fortis Advisors LLC, 2015 WL 401371, at *6. Without specific allegations of when these representations occurred, Aaron Tiram has not plead fraudulent inducement with the particularity required by Rule 9(b).

Second, Aaron Tiram fails to allege how Defendants made these representations or where they occurred. Aaron Tiram does not state whether the representations occurred orally or in writing. Nor does he state whether they occurred at board meetings, at his home, or over the telephone. Without specific factual detail, the allegations cannot "apprise [Defendants] of sufficient information concerning the circumstances of the alleged fraud." Id. at *8. Therefore, they fail to meet Rule 9(b)'s standard.

**b. Justifiable Reliance**

Defendants also argue the fraudulent inducement claim should be dismissed because Aaron Tiram could not have justifiably relied on Defendants' representations regarding Jonathan and Talia Tirams' employment. (Doc. No. 33 at 22–23.) Defendants assert Aaron Tiram's justifiable reliance argument fails because (1) the APA has an integration clause and (2) the Employment Agreements contain without-cause termination provisions. (Id.) These arguments present two separate issues and implicate a complex area of Delaware law. Both arguments are addressed in turn.

First, Defendants argue the APA integration clause bars Aaron Tiram's fraud claim. Delaware courts diverge on an integration clause's effect on fraud claims based on future promises. Under the majority rule, the APA integration clause would not bar Aaron Tiram's fraudulent inducement claim. "[A]n integration clause, standing alone, is not sufficient to bar a fraud claim; the agreement must also contain explicit anti-reliance language." Trifecta Multimedia, 318 A.3d at 465. In fact, "[i]f parties fail to include unambiguous anti-reliance language, they will not be able to escape responsibility for their own fraudulent representations made outside of the agreement's four corners." Arby Partners, 891 A.2d at 1059; see also Kronenberg v. Katz, 872 A.2d 568, 592 & n.45 (Del. Ch. 2004) (collecting cases).

Here, the APA contains an integration clause and a provision titled "Non-Reliance of [Estyle]." (Doc. No. 34 Ex. A §§ 7.9, 9.6.) However, the APA does not contain a similar non-reliance provision for Aaron Tiram. Because Delaware courts require "unambiguous anti-reliance language" for an integration clause to bar a fraud claim, and because no such language exists regarding Aaron Tiram, the APA integration clause does not prevent Aaron Tiram's fraud claim under the majority rule. Johnson & Johnson v. Fortis Advisors LLC, 352 A.3d 229, 274 (Del. 2026) ("[W]here the contract contains a one-sided anti-reliance clause disclaiming reliance by only one party, and the other party to the contract made no comparable promise, [the] clause cannot be invoked to bar the other party's post-closing claims for intentional extra-contractual fraud."); Paragon Metals Holdings LLC v. Smith, No. 385-2025, 2026 WL 1898766, at *8 (Del. July 1, 2026) (same).

By contrast, some Delaware courts do not require anti-reliance language for an integration clause to bar fraud claims based on future promises. See Trifecta Multimedia, 318 A.3d at 466–67 (describing majority and minority approach). For example, in Shareholder Representative

Services LLC v. Albertsons Cos., the Delaware Chancery Court said "[w]hile anti-reliance language is needed to stand as a contractual bar to an extra-contractual fraud claim based on factual misrepresentations, an integration clause alone is sufficient to bar a fraud claim based on expressions of future intent or future promises." No. 2020-710, 2021 WL 2311455, at *12 (Del. Ch. June 7, 2021) (citing Black Horse Cap., LP v. Xstelos Holdings, Inc., No. 8642-VCP, 2014 WL 5025926, at *21 (Del. Ch. Sept. 30, 2014)); see also Meyers v. Zimmer Biomet Holdings, Inc., No. 2025-0732, 2026 WL 1194997, at *6–7 (Del. Ch. May 1, 2026). Under this approach, Defendants have a strong argument that the representations about Jonathan and Talia Tiram's future employment were "future promises" and not "factual misrepresentations." Therefore, a minority of courts would find the APA integration clause to prevent Aaron Tiram from bringing a fraudulent inducement claim because the allegations are based on statements of future intent.[9]

While Delaware courts may differ on the effect of the APA integration clause, the impact of the Employment Agreements is more straightforward. Delaware courts "have found a lack of justifiable reliance at the pleading stage when the dispute involves alleged prior misrepresentations or omissions that run expressly counter to the terms of a fully integrated contract." Albertsons, 2021 WL 2311455, at *11; Park7 Student Hous., LLC v. PR III/Park7 SH Holdings, LLC, 340 A.3d 614, 619 n.29 (Del. Ch. 2025) ("While Albertsons and Black Horse state a minority rule permitting integration clauses to foreclose fraud claims based on forward-looking statements, their holdings on the effect of integration clauses on statements that conflict with contract terms are mainstream Delaware law."). That is to say, regardless of whether an integration clause contains

[9] Some Delaware Chancery opinions have disavowed this approach in recent years. Compare Trifecta Multimedia, 318 A.3d at 466–67, and Fortis Advisors, 2024 WL 4048060, at *46 (declining to apply Black Horse and Albertson's approach regarding integration clauses) with Meyers, 2026 WL 1194997, at *6–7 (applying minority approach to allow integration clause to bar fraud claim).

anti-reliance language, "an integration clause functions to preclude a fraud claim where the extracontractual misrepresentation directly conflicts with an express term in the contract." Park7 Student Hous., 340 A.3d at 619. See also Trifecta Multimedia, 318 A.3d at 469–70 ("While a standard integration clause alone will not bar a fraudulent inducement claim, a standard integration clause does bar the admission of extrinsic evidence 'for the purpose of varying or contradicting the terms of that contract.'" (quoting Phillips v. Wilks, Lukoff & Bracegirdle, LLC, No. 671-2013, 2014 WL 4930693, at *3 (Del. Oct. 1, 2014))).

Here, Aaron Tiram alleges he justifiably relied on Defendants' representations that his children would remain employed at Estyle after the merger, and that the without-cause termination provisions in the Employment Agreements were a "mere formality." (Doc. No. 27 ¶¶ 3, 123, 226.) However, after these misrepresentations were made, Aaron Tiram executed multiple agreements stating that his children's employment would be at-will and that they could be terminated without-cause. (Doc. No. 34 Ex. A § 7.12; Ex. E § 4(d)). These express contractual provisions directly contradict Defendants' alleged misrepresentations and therefore cannot form the basis of a fraudulent inducement claim. Therefore, Aaron Tiram fails to sufficiently plead justifiable reliance.

Accordingly, because the Amended Complaint fails to state a fraudulent inducement claim upon which relief may be granted, Count III will be dismissed.

**C. Count IV (Breach of Implied Covenant of Good Faith and Fair Dealing)**

Count IV of the Amended Complaint is a direct claim by Aaron Tiram against Defendants for breach of the implied covenant of good faith and fair dealing. (Doc. No. 27.) Plaintiff Aaron Tiram alleges Defendants breached the duty of good faith by bringing meritless litigation against him "with the specific intent of preventing the release of escrowed funds to Aaron Tiram." (Id. ¶

249.) In the Motion to Dismiss, Defendants argue Count IV should be dismissed because it is "duplicative" of Count V, which alleges breach of contract. (Doc. No. 33 at 27–28.)

Delaware law recognizes an implied covenant of good faith and fair dealing in every contract. Winshall v. Viacom Int'l, Inc., 55 A.3d 629, 636 (Del. Ch. 2011). The implied covenant "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 442 (Del. Super. Ct. 2005) (quoting Wilgus v. Salt Pond Inv. Co., 498 A.2d 151, 159 (Del. Ch. 1985)). "When considering an implied covenant claim, a court must ask whether it is 'clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of as a breach of the implied covenant of good faith—had they thought to negotiate with respect to that matter.'" Stewart v. BF Bolthouse Holdco, LLC, No. 8119, 2013 WL 5210220, at *15 (Del. Ch. Aug. 30, 2013) (quoting Gerber v. Enter. Prods. Holdings, LLC, 67 A.3d 400, 418 (Del. 2013)).

Applying the implied covenant is a "cautious enterprise," and courts "will only infer contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." Gerber, 67 A.3d at 421 (quoting Nemec v. Shrader, 991 A.2d 1120, 1126 (Del. 2010)). Accordingly, when a contractual term addresses an issue, that term will "always supersede" and the implied covenant will not apply. Id. at 419. Because of this rule, "an implied covenant claim will not survive a motion to dismiss if it duplicates breach of contract claims." Bandera Master Fund LP v. Boardwalk Pipeline Partners, LP, No. 2018-0372, 2019 WL 4927053, at *22 (Del. Ch. Oct. 7, 2019).

Here, Plaintiffs fail to state a claim for breach of the implied covenant of good faith and

fair dealing. The APA expressly requires "the parties to cooperate in good faith to resolve any disputed claim for indemnification." (Doc. No. 34 Ex. A § 6.6(a).) Because there is an express term in the APA requiring good faith in resolving indemnification claims, there is nothing for the Court to imply. If Estyle acted in bad faith by bringing the litigation and retaining the escrow funds, it would be in breach of the APA's provisions. As such, "[t]he Court cannot conceive of any circumstances where [Estyle] could be deemed to have acted in bad faith but not be in breach of contract." Stewart, 2013 WL 5210220, at *16 (declining to imply duty of good faith where contract explicitly required good faith); Cercacor Lab'ys, Inc. v. Metronom Health, Inc., No. 23C-05-200, 2025 WL 1180186, at *8 (Del. Super. Ct. Apr. 23, 2025) (same). Therefore, Count IV will be dismissed because it is duplicative of the breach of contract claim.

### D. Count V (Breach of Contract)

Count V is a direct claim brought by Aaron Tiram against Defendants for breach of contract. (Doc. No. 27.) As discussed supra, the APA required good-faith cooperation among the parties to resolve disputed claims for indemnification. (Id. ¶ 87.) Aaron Tiram alleges Defendants breached the APA by abruptly discontinuing good faith negotiations to resolve the indemnification dispute and commencing litigation in the related case, Estyle Corp., No. 23-1393. (Id. ¶ 256.) Accordingly, Aaron Tiram alleges he is entitled to either (1) specific performance to direct the escrow agent to release the funds, or (2) damages for Defendants' breach of the APA. (Id. ¶ 257.)

As an initial matter, "only a party to a contract may be sued for a breach of that contract." Gotham Partners, LP v. Hallwood Realty Partners, LP, 817 A.2d 160, 172 (Del. 2002). The only Defendant who is a party to the APA is Estyle Corp., LLC. (Doc. No. 34 Ex. A.) Therefore, Count V will be dismissed as to all Defendants except for Estyle Corp., LLC.

To state a claim for breach of contract under Delaware law, a plaintiff must demonstrate the existence of a contract, the breach of an obligation imposed by the contract, and resultant

damage to the plaintiff. Kuroda v. SPJS Holdings, LLC, 971 A.2d 872, 883 (Del. Ch. 2009). "A plaintiff must properly allege each of these elements, even where the plaintiff is seeking an equitable remedy such as specific performance." Id.

Here, the parties do not dispute that the APA is a valid and binding contract. Aaron Tiram alleges Defendant Estyle Corp., LLC breached the contract by bringing a lawsuit in bad faith and using that lawsuit as justification to prevent the escrow agent from releasing the funds he is owed. (Doc. No. 27 ¶ 256.) Aaron Tiram alleges damages in the form of (1) not receiving the disputed funds, and (2) incurring litigation expenses. (See id. ¶¶ 179, 256.) Because he has plausibly alleged all three elements of a breach of contract claim, this claim will not be dismissed against Defendant Estyle Corp., LLC.

Nevertheless, Defendants assert this claim is improper because they have followed the APA's good-faith negotiation requirement. (Doc. No. 33 at 29.) They claim "Estyle attempted for nearly two-and-a-half years to resolve the indemnification disputes with Mr. Tiram," and cite to their Complaint in related case Estyle Corp., No. 23-1393 as support. (Id.) But "[a]t the motion to dismiss stage, the complaint's non-conclusory factual allegations 'generally defin[e] the universe of facts that the trial court may consider.'" Black Horse, 2014 WL 5025926, at *27 (quoting In re Gen. Motors S'holder Litig., 897 A.2d 162, 168 (Del. 2006)). At this stage, viewing the Complaint in the light most favorable to Aaron Tiram, he has adequately pled a breach of contract claim. Therefore, Count V will be dismissed as to all Defendants except for Estyle Corp., LLC.

## V. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. Nos. 32, 33) will be granted on Counts I, II, III, and IV. The Motion will be granted in part and denied in part on Count V. The only Defendant that remains on Count V is Estyle Corp., LLC. An appropriate Order follows.